ALTHEA GILKEY, ESQ.
Nevada Bar No. 006312
**ALTHEA GILKEY, CHTD**
4955 S. Durango Drive, Suite 205
Las Vegas, Nevada 89113
(702) 951-8000
Attorney for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

TERRANCE MORTON,

        Plaintiff,

vs.

NEVADA BEVERAGE COMPANY,

        Defendant.

CV-S-01-0952-RLH-PAL

**COMPLAINT AND JURY DEMAND**

COMES NOW, Plaintiff, TERRANCE MORTON, by and through his attorney, ALTHEA GILKEY, ESQ., and for his Complaint against the Defendant, states and alleges as follows:

### I. JURISDICTION

1. This action is brought to remedy Discrimination and Retaliatory Discharge for sexual harassment of Plaintiff by a female co-worker which is protected under and in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et. seq. (hereinafter "Title VII") and the corresponding Nevada Revised Statutes (hereinafter "NRS") § 613.330 et. seq.

2. Venue herein is proper in this District pursuant to § 706 (f)(3) of Title VII, 42 U.S.C. § 2000e-5 (f)(3), and under NRS 613.330 et. seq. Defendant is a corporation with offices in the State of Nevada, doing business therein, and the alleged unlawful retaliation and discrimination was committed within the State of Nevada.

### II. PARTIES

3. Plaintiff, TERRANCE MORTON, is a citizen of the United States, a male and a resident of the State of Nevada.

///

1

4. Defendant, NEVADA BEVERAGE COMPANY, (hereinafter, "BEVERAGE") is a corporation, organized and existing under the laws of the State of Nevada, doing business in the State of Nevada.

5. The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants DOES I through V and ROE CORPORATIONS I through V are unknown to Plaintiff who therefore sue said Defendants by fictitious names. Plaintiff is informed and believes and therein alleges that each of the Defendants designated as DOES or ROE CORPORATION is responsible in some manner for the events and happenings referred to, and caused damages proximately to Plaintiff as therein alleged, and that Plaintiff will ask leave of this Court to amend their complaint to insert the true names and capacities of DOES I through V and ROE CORPORATIONS I through V when the same have been ascertained and to join such Defendants in this action.

### III. PROCEDURAL REQUIREMENTS

6. Plaintiff filed a charge of discrimination with the Nevada Equal Rights Commission (hereinafter, "NERC") and the Equal Employment Opportunity Commission (hereinafter, "EEOC") complaining of the acts of discrimination and retaliatory discharge alleged herein.

7. More than 180 days having elapsed since the filing of his charge, the EEOC issued Plaintiff a notice of his right to sue Defendant in Federal Court.

8. Plaintiff has complied fully with all prerequisites to jurisdiction in this Court under Title VII. Jurisdiction of the Court is proper under § 706 (f)(3) of Title VII, 42 U.S.C. § 2000e-5 (f)(3), and under NRS 613.330 et. seq.

### IV. ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

9. Plaintiff was employed by Defendant BEVERAGE for approximately 8 months. Throughout his employment, Plaintiff was a competent employee and made substantial contributions to Defendant BEVERAGE.

10. Starting in December of 1997, Plaintiff was subjected to suggestive comments by a female co-worker, a dispatcher for Defendant BEVERAGE.

11. Sherry, at that time knew that Plaintiff was engaged to be married.

///

12. Approximately two days prior to Defendant BEVERAGE's Christmas party, Plaintiff was asked by the female co-worker to be her date. Plaintiff informed the female co-worker that he would be taking his fiancé.

13. On or about January 5, 1998 at 10:57a.m., Plaintiff received a page from the female co-worker, "Hey handsome, Call Byron at the shop. ASAP Very important."

14. On or about January 6, 1998, Plaintiff and the female co-worker where engaged in a conversation where the female co-worker showed Plaintiff a picture of an ex-employee and told him that he was the love of her life. Plaintiff then inquired as to why she always picks on him where the female co-worker replied that she was just kidding. Plaintiff made it very clear to her that Plaintiff was not interested in any type of relationship.

15. Later that day, Plaintiff spoke with his supervisor Jeff Wilkerson in regards to the female co-worker's behavior as well as the page received January 5, 1998. Mr. Wilkerson's replied by saying that she doesn't care if your about to get married or not, she just wants to get "Fucked." Mr. Wilkerson went on to tell him about a former employee she had a relationship with.

16. No action was taken as a result of Plaintiff's complaint.

17. Many times after my conversation with the female co-worker, she would leave different mints and heart shaped chocolates in my in box as well as drawings of flowers and hearts on my messages and delivery schedule.

18. The female co-worker would also grab my hand while I was reaching for my messages.

19. The female co-worker would often whistle and shout at me when I walked past her.

20. On or about February 6, 1998, the female co-worker asked Plaintiff if he was still engaged, after Plaintiff said yes she asked if Plaintiff would let her know if things change.

21. Later that day the female co-worker approached Plaintiff and asked if there was anything he had to tell her. She then asked if he was still engaged. Plaintiff said yes and walked away.

22. On or about March 6, 1998 Plaintiff was having a conversation with another employee, Brandy, where he expressed his concern that his marriage may not be working. The female co-worker overheard and replied that he should have picked her, she would have lasted longer.

///

3

1    23.    Plaintiff received a page on March 6, 1998 at 10:01a.m. "Your lovely bride left something for you. It is in your slot."

24.    On or about March 9, 1998 at 2:30p.m. Plaintiff received a page "It was nice to see you happy today. Cheetahs needs 1 keg Becks on regular day."

25.    On or about March 26, 1998 at 7:05a.m. Plaintiff received a page "Good morning Terry! Hope you have a great day, be careful, Shae."

26.    On or about March 26, 1998, at 8:34a.m. Plaintiff received a page "*Please* let me know what kind of messages you are looking for, just the vibration effect?"

27.    On or about March 26, 1998, at 9:01a.m. Plaintiff received a page "Do you like cats? `I!"

28.    On or about March 26, 1998, at 9:33a.m. Plaintiff received a page "Did you hear about White House Intern Barbie? She comes complete with kneepads."

29.    On or about March 26, 1998, at 9:46a.m. Plaintiff received a page "Divorce Barbie... Comes with all Kens stuff."

30.    On or about March 26, 1998, at 10:11a.m. Plaintiff received a page "When is your birthday? Shae..."

31.    On or about March 2, 1998, at 12:06p.m. Plaintiff received a page "Aren't you glad you got married on your birthday so you could forget the whole nasty affair and never think about it again?"

32.    On or about March 26, 1998, at 12:10p.m. Plaintiff received a page "Just kidding hope that didn't hurt too much."

33.    On or about March 26, 1998, at 1:16p.m. Plaintiff received a page "Did you sign up for any Corp. Challenge? Take your kids to the picnic, can't ask for more fun than that."

34.    On or about March 26, 1998, at 1:40p.m. Plaintiff received a page "Did Tupac really die? I don't think so..."

35.    On or about March 26, 1998, at 1:44p.m. Plaintiff received a page "Last CO says "Suge shot me" at the beginning."

36.    On or about March 26, 1998, at 1:54p.m. Plaintiff received a page "Who's life is really worse, your or mine? Bet I'll win..."

///

37. On or about March 26, 1998, at 2:20p.m. Plaintiff received a page "I am leaving for the day, no more fun pages, have a great night."

38. Later that night, Plaintiff called Gary Manger again to inform him about the excessive pages and stress he was having that day.

39. On or about March 27, 1998, at 2:00a.m. Plaintiff called in sick to work but could only leave a message with Artie Galego. Plaintiff called back at 4:00a.m. to talk to Bob Orlowski to tell him he could not make it in that day.

40. Mr. Orlowski became very angry that Plaintiff was calling in sick. He cursed and asked Plaintiff to at least come in for a couple of hours to help some employees. Plaintiff agreed but immediately called Mr. Orlowski back to inform him that he could not come in due to extreme stress, anxiety and insomnia as a result of the different pages and sexual harassment at work. Mr. Orlowski then told Plaintiff to just make sure to have a doctors excuse when he came back. Plaintiff said that he would do his best to obtain a note.

41. Plaintiff went back to work on or about March 30, 1998 where he was immediately confronted by Mr. Orlowski. He was asked to show his doctor's note as well as his pager. Plaintiff did not have either stated that he did not have time to get a doctors note and that his pager was being looked at due to numerous pages of sexual innuendos and unprofessional pages.

42. On or about March 30, 1998, Defendant BEVERAGE met with Plaintiff and terminated his employment.

43. Defendant BEVERAGE's memo of termination of Plaintiff was dated March 27, 1998, the day Plaintiff called in sick to work.

44. At all times mentioned in this Complaint, Sherry, Bob Orlowski, and Jeff Wilkerson were employed by Defendant BEVERAGE, and in doing said acts alleged in this Complaint were acting within the course and scope of that employment.

45. Defendant BEVERAGE is liable for the conduct of Sherry, Bob Orlowski, and Jeff Wilkerson under the doctrine of Respondeat Superior.

///

///

## V. FIRST CAUSE OF ACTION

## UNLAWFUL DISCRIMINATORY EMPLOYMENT PRACTICE

46. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 45 of this Complaint with the same force and effect as if set forth herein.

47. All of the actions taken by the Defendant or those acting on behalf of Defendant and referred to herein including intimidating, disciplining, and discharging Plaintiff violates Plaintiff's protected rights.

48. The facts previously set out give rise to a cause of action for discrimination as set forth in NRS 613.330 et. seq., it is an unlawful employment practice for an employer to discriminate or otherwise discriminate against any of their employees because he has opposed any practice made an unlawful employment practice by NRS 613.330 et. seq., Defendant BEVERAGE discriminated against Plaintiff by intimidation and discipline when he opposed and reported the act of sexual harassment by a female co-worker. Defendant BEVERAGE knew or reasonably should have known of their employees conduct. Plaintiff has been injured because of this discrimination. Defendant BEVERAGE condoned and ratified this misconduct and took no action to stop it, although Defendant BEVERAGE were aware of such conduct.

## VI. THIRD CAUSE OF ACTION

## RETALIATION

49. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 48 of this Complaint with the same force and effect as if set forth herein.

50. The treatment accorded Plaintiff by Defendant, after he reported the sexual harassment by a female co-worker is discrimination as specified above, was the result of intentional discrimination against Plaintiff in retaliation for him having complained of sexual harassment and discrimination to Defendant by a female co-worker.

51. As a result of these actions, Defendant willfully, wantonly, recklessly and maliciously violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16 et. seq., by discriminating against Plaintiff in retaliation for him having complained of sexual harassment by a female co-worker.

6

1  52. As a result of Defendant's unlawful conduct in violating Title VII's prohibition against reprisal, Plaintiff has suffered damages in the form of a reduction in pay, lost promotions and lost promotional opportunities, lost pay and other benefits associated with such reputation, embarrassment, humiliation, and mental and emotional pain including, without limitation, physical pain and injuries related to stress and anxiety.

## VII. FOURTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

53. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 52 of this Complaint with the same force and effect as if set forth herein.

54. The actions of Defendant was outrageous, intentional, malicious, and done with reckless disregard of the fact that Defendant would certainly cause Plaintiff to suffer severe emotional distress.

55. As a direct and proximate result of the acts of Defendant, Plaintiff suffered severe emotional distress in the form of fear, nervousness, anxiety, worry, indignity and depression. Defendant's conduct created a work environment extremely detrimental to Plaintiff's emotional and physical health and interfered with Plaintiff's work performance.

56. As a result of Defendant's acts, Plaintiff has suffered monetary damages for severe emotional distress.

## VIII. FIFTH CAUSE OF ACTION
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

57. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 56 of this Complaint with the same force and effect as if set forth herein.

58. Defendant knew or should have known that failure to exercise due care, their acts and omissions, above described, would cause Plaintiff severe emotional distress.

59. As a proximate result of the acts of Defendant, Plaintiff suffered severe emotional distress, including public humiliation, mental anguish, emotional and physical distress and has been injured in mind and body all to Plaintiff's damages.

///

///

7

## IX. SIXTH CAUSE OF ACTION

## BREECH OF EMPLOYMENT CONTRACT

60. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 59 of this Complaint with the same force and effect as if set forth herein.

61. On or about September 8, 1997, Plaintiff and Defendant entered into a employment contract wherein a collective bargaining agreement governed the parties rights and obligations. Plaintiff agreed to serve Defendant as a Delivery Driver. Pursuant to the collective bargaining agreement Defendant shall give Plaintiff written warnings and notices of Defendant's intention to discontinue Plaintiff's employment.

62. On or about March 30, 1998, Plaintiff was given a discharge notice dated March 27, 1998. Plaintiff was discharged in violation of the collective bargaining agreement.

63. Article 4 of the union collective bargaining agreement refers to the required written notice before termination of employment. Defendant owes Plaintiff back-pay from the day of termination until the resolution of this matter.

## IX. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment:

(a) Declaring that the acts and practices complained of herein are in violation of Title VII;

(b) Directing Defendant to take such action as is necessary to ensure that the effects of these unlawful employment practices do not continue to affect Plaintiff's employment opportunities;

(c) Awarding Plaintiff the costs of this action together with reasonable attorney's fees, as provided by § 706(k) of Title VII, 42 U.S.C. § 2000e-6(k).;

(d) Declaring that the acts and practices complained of herein are in violation of NRS 613.330 et. seq.;

///

///

///

///

8

(e) Directing Defendant to pay Plaintiff full back pay and front pay, including all benefits, along with compensatory damages;

(f) Awarding Plaintiff punitive damages for pain and suffering and loss of enjoyment of life;

(g) Awarding Plaintiff costs and reasonable attorneys fees; and

(h) Granting such other and further relief as this Honorable Court deems just and proper.

### DEMAND FOR A TRIAL BY JURY

Pursuant to Rule 39(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

DATED this 10th day of August, 2001.

Respectfully Submitted by,

ALTHEA GILKEY, ESQ.
Nevada Bar Number 006312
ALTHEA GILKEY, CHTD.
4955 So. Durango Drive, Suite 205
Las Vegas, Nevada 89113
(702) 951-8000
Attorney for Plaintiff

9

## VERIFICATION

STATE OF NEVADA )
) SS:
COUNTY OF CLARK )

TERRANCE MORTON, being first duly sworn according to law, deposes and says:

That he is the Plaintiff in the above-entitled action; that he has read the above and foregoing COMPLAINT AND JURY DEMAND, and know the contents thereof; that the same is true of his own knowledge, except for any matters therein stated upon information and belief, and as to those matters therein stated, he believe them to be true.

*/s/ Terrance Morton*
TERRANCE MORTON

SUBSCRIBED AND SWORN to before me this 7th day of ~~June~~ August, 2001.

*/s/ Jeri Loback*
NOTARY PUBLIC in and for said County and State

JERI LOBACK
Notary Public - Nevada
No. 00-62957-1
My appt. exp. June 1, 2004

10